**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **JANE DOE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION 09-0329-WS-N** |
| ) | |
| **CITY OF DEMOPOLIS,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

**ORDER**

This matter comes before the Court on the Motion for Summary Judgment (doc. 69) and Motion to Strike (doc. 75) filed by defendant City of Demopolis. Both Motions have been briefed and are now ripe for disposition.[1]

**I.     Relevant Background.[2]**

**A.     *Nature of Plaintiff's Claims.***

Plaintiff, Jane Doe ("Doe"), brought this action by and through her mother and next friend, Mary Doe, against the City of Demopolis (the "City") and Terrance Smith based on allegations that Smith repeatedly sexually assaulted her in 2006 while he was employed as a Demopolis police officer. Doe's Amended Complaint (doc. 51) interposes the following causes of action: (i) a claim against the City for violation of Alabama Code § 11-47-190 on the theory

---

[1]     After the court-ordered briefing schedule had closed and the Rule 56 Motion had been taken under submission, plaintiff filed a "Supplemental Response to Defendant's Motion for Summary Judgment" (docs. 79, 80). Plaintiff neither requested nor obtained leave to file this memorandum. Nonetheless, in its discretion, the Court will examine and consider plaintiff's sur-reply, given the brevity of the document and the fact that it merely highlights deposition excerpts that were already part of the summary judgment record.

[2]     The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party, resolving all reasonable doubts about the facts in favor of the non-movant. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Thus, plaintiff's evidence is taken as true and all justifiable inferences from the record are drawn in her favor.

that the City, despite "knowledge of Smith's obvious propensity for sexual abuse and molestation, … failed to take prompt remedial action reasonably likely to prevent the misconduct from recurring" (Count One); (ii) a Fourteenth Amendment due process claim against the City pursuant to 42 U.S.C. § 1983, alleging that the City "had either actual or constructive notice of Smith's propensity for sexual abuse," but "showed deliberate indifference to the abuse by failing to correct the problem and prevent Smith from continuing to act as a Police Officer with access to children" (Count Two);[3] and (iii) a state common-law claim against Smith for assault and battery and invasion of privacy (Count Three).

Both the City and Smith have appeared in this action and are represented by separate counsel. The City (but not Smith) has now moved for summary judgment on all claims brought against it, namely Counts One and Two. The Court has no occasion at this time to evaluate the merits of Count Three, which is Doe's exclusive cause of action asserted against Smith and as to which no party has moved for summary judgment.

### B.    *The Alleged Sexual Assaults.*

The relevant facts are largely undisputed as between the City and Doe.[4]  In 2006, defendant Smith was working as a patrol officer with the City of Demopolis Police Department.

---

[3]    The Amended Complaint elaborates on the constitutional claim by alleging that the City "had a duty to perform a criminal history background information check on all public employees who have unsupervised access to and provide education, training, instruction, or supervision for children in an educational setting," that the City "also had a duty to control and supervise the public school employees of the city," and that the City "acted in bad faith in failing to perform these duties." (Doc. 51, ¶¶ 24-25.) These allegations do not help Doe on summary judgment because (i) there is no evidence as to whether the City did or did not perform a background check on Smith; (ii) there is no evidence that a background check would have revealed material information placing the City on notice of Smith's sexual proclivities; and (iii) Smith was not a public school employee and did not work in an educational setting.

[4]    These facts are also at the core of Doe's claims against defendant Smith for assault and battery and invasion of privacy. To be clear, the Court is not making findings of fact that would be binding on Smith, nor is it determining undisputed facts from Smith's standpoint. After all, defendant Smith has not participated in the summary judgment briefing, nor was he obliged to do so, given that no party moved for summary judgment as to Count Three (the only cause of action asserted against him). Accordingly, nothing herein limits or forecloses Smith's ability to challenge any facts at trial. This Order sets forth the facts in the light most favorable to Doe simply because Rule 56 so requires, not because the Court has made any definitive factual determinations. Thus, for example, while Doe and the City concur that Smith sexually assaulted Doe on several occasions, this Order would not bar Smith from disputing that point at trial.

(Doc. 69, Exh. 7; Manuel Dep. (doc. 69, Exh. 3), at 24-25.)  As of September 2006, plaintiff, Jane Doe, was a 13-year old girl who attended Demopolis Middle School.  (J. Doe Dep. (doc. 69, Exh. 2), at 5, 11.)  On an afternoon in late September 2006, Smith was on duty at the crosswalk in front of Demopolis Middle School when classes recessed for the day.  (*Id.* at 5, 7.)[5]  Smith and Doe exchanged smiles (but no words) as she crossed the street.  (*Id.* at 8, 10.)  There is no evidence that they had any further contact on school grounds or at the crosswalk.

Sometime between September 2006 and November 2006, Smith placed a call to Doe at her home telephone number.  (*Id.* at 9-10.)  During the ensuing conversation, Smith asked Doe questions about herself, including her age, to which she responded (inaccurately) that she was 14 years old.  (*Id.* at 10-11.)  For some time thereafter, Smith and Doe called each other on a daily basis, with the topic of sex sometimes arising in those conversations.  (*Id.* at 14-15.)  In one such conversation, on November 10, 2006, Smith asked Doe to meet him at the old jailhouse around the corner from her house.  (*Id.* at 15-16.)  Doe understood that Smith was propositioning her for sex.  (*Id.* at 16.)  She agreed to meet with him and, later that afternoon, the two had sexual intercourse inside the jail.  (*Id.* at 17-21.)  Afterwards, Smith told Doe "not to tell anybody" because "he can get in a lot of trouble."  (*Id.* at 24.)[6]  Doe met with Smith and had sex with him in his personal vehicle behind some storage buildings on a pair of subsequent occasions, specifically November 21, 2006 and December 5, 2006.  (*Id.* at 25-31.)[7]  At no time did Smith ever threaten Doe or force her to engage in sexual relations.  (*Id.* at 25, 31.)

## C.   *Investigation, Dismissal and Prosecution of Defendant Smith.*

Shortly after the December 5 liaison, the principal of Demopolis Middle School, Clarence Jackson, received a report from a friend of Doe's that Smith might be "taking advantage" of Doe. (Jackson Dep. (doc. 69, Exh. 5), at 6-7.)  Upon receiving this information, Jackson confronted

---

[5]      At that time, Demopolis police officers served as crosswalk guards at Demopolis Middle School on a regular basis, with different officers performing those services at different times.  (Jackson Dep., at 6.)  Supervisors would assign patrol officers to guard school crossings in the mornings and afternoons.  (Manuel Dep., at 52.)

[6]      At some point, Smith informed Doe that he would lose his job and go to jail if anyone learned of their sexual relationship.  (*Id.* at 39-40.)

[7]      Throughout this time period, Smith and Doe were spending "hours" on the telephone together on a daily basis.  (*Id.* at 26-28.)

Doe, who eventually disclosed her sexual relationship with Smith. (*Id.* at 9-13.) Jackson promptly reported the matter to Jeff Manuel, who was at that time Police Chief of the City of Demopolis. (*Id.* at 9-10; Manuel Dep., at 27-28, 51.) Chief Manuel testified that he was shocked by these allegations. (Manuel Dep., at 52.) Nonetheless, he placed Smith on administrative leave and contacted the Marengo County Sheriff's Office to request that parallel investigations be initiated, with the Sheriff's Office handling the criminal investigation and the Demopolis Police Department contemporaneously conducting an internal investigation. (*Id.* at 28.) Chief Manuel ordered Smith to cooperate with the internal investigation, and recommended that Smith's employment be terminated when he refused. (*Id.* at 22-24.)[8] Smith was fired for that reason. (Soronen Dep., at 25-26.)[9]

As a result of the Sheriff's Office investigation, Smith was arrested on December 19, 2006, and charged with three counts of rape in the second degree. (Doc. 69, Exh. 6.) Pursuant to Alabama Code § 13A-6-62, a person commits the crime of rape in the second degree, a Class B felony, if he or she, being 16 years old or older, engages in sexual intercourse with a person of the opposite sex who is less than 16 and more than 12 years old, provided that the perpetrator must be at least two years older than the victim. The City and Doe appear to concur that Smith was ultimately convicted of violating § 13A-6-62 based on his conduct in this matter. (Manuel Dep., at 23-24; Soronen Dep., at 22; *see also* doc. 69, at 4; doc. 71, at 1.)[10]

---

[8]     In particular, when investigator Tim Soronen met with him in furtherance of the Demopolis Police Department's internal investigation, Smith refused to answer questions. (Soronen Dep. (doc. 69, Exh. 4), at 23-24.)

[9]     Plaintiff's summary judgment brief makes a broad accusation that the City "does not conduct thorough investigations into" cases involving allegations that police officers are having sex with underaged girls. (Doc. 71, at 13.) But plaintiff identifies no deficiency, and the Court's examination of the record has revealed none, in the method and manner of the City's investigation of the Smith/Doe relationship or of any other incident involving officers and persons below the age of consent.

[10]     The disposition of the charges against Smith is not crucial to the City's pending Rule 56 Motion. Nonetheless, the Court notes that the information presented in the summary judgment filings (*i.e.*, that Smith was convicted of these charges in November 2007) is difficult to reconcile with other information in the court file. Back in June 2009, Smith's counsel of record notified the Court that "Smith is currently awaiting trial on a charge of Second Degree Rape of Doe in the Circuit Court of Marengo County, Alabama" and that "Smith has been indicted for Second Degree Rape and his criminal trial is pending." (Doc. 21, at 2, 4.) Indeed, (Continued)

### D.	*The City's Notice of Inappropriate Sexual Conduct.*

The parties' summary judgment briefs devote considerable attention to whether the City was on notice prior to November 2006 that Smith and/or other Demopolis police officers were preying on underaged girls.  There are three lines of record evidence on this point, to-wit: (i) evidence concerning Chief Manuel's knowledge of inappropriate sexual behavior by Demopolis officers, and his response or lack thereof; (ii) evidence concerning a complaint lodged against Officer Tommy Johnson; and (iii) testimony of a former Demopolis police officer named Robert Clayton.  Each of these categories will be summarized in turn.[11]

Viewed in the light most favorable to Doe, the record evidence concerning what Chief Manuel knew or did not know is as follows:  By his own admission, Chief Manuel had heard "rumors" (at unspecified times) that "Officer X is sleeping with Officer B's spouse or things like that." (Manuel Dep., at 25.)  He had heard rumors of officers (including Smith) "engaging in sexually inappropriate conduct" before November 2006, albeit "not necessarily [with] underaged

---------------------------------

on the strength of these representations that Smith's criminal charges concerning the Doe matter were still pending, the undersigned stayed this action from July 10, 2009 through June 21, 2010, with Smith filing periodic status reports throughout that interval reflecting that the criminal case remained active and unresolved.  (*See* docs. 24-39.)  In May 2010, Smith's counsel notified the Court that the criminal case had been dismissed.  (*See* doc. 37.)  Given these representations in the court file, the revelation in summary judgment briefs that Smith was convicted back in 2007 of raping Doe suggests that the parties furnished inaccurate (or perhaps incomplete) information concerning the status of that matter in connection with the stay, which now appears to have been unnecessary.

[11]	Plaintiff hinders her cause by not attaching to her summary judgment brief copies of the deposition excerpts upon which she relies.  Through this omission, Doe overlooks the requirement that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by … citing to particular parts of ***materials in the record***."  Rule 56(c)(1)(A), Fed.R.Civ.P. (emphasis omitted).  If neither side has filed the particular deposition excerpts on which plaintiff relies, then she is not citing to "materials in the record" because those specific materials are not found in the summary judgment record.  Plaintiff purports to set forth multiple block quotations from deposition excerpts that are outside the record; however, without copies of the relevant portions of the transcripts, the undersigned cannot verify the accuracy of those quotations.  Nonetheless, given the City's failure to object to those quotations or to point out any discrepancies therein, the Court in its discretion will consider the deposition excerpts as set forth in plaintiff's brief.

people." (*Id.* at 34-35.)[12]  Notwithstanding these "rumors," Chief Manuel did not recall sexual harassment training ever being provided to Demopolis police officers.  (*Id.* at 17-18.)  More broadly, there is no evidence that the City furnished such training to its police officers generally, or to Smith specifically, prior to the November/December 2006 timeframe of interest.  Perhaps plaintiff's strongest piece of evidence concerning Chief Manuel's knowledge is that, on a single occasion (at an unspecified date), he stated at a meeting, "I heard guys was messing with underaged girls.  If you're doing it, stop it.  You know who you are."  (Clayton Dep. (doc. 75, Exh. A), at 49.)  The record is silent, however, as to when this statement was made,[13] what information Chief Manuel had received on this topic, or even what he meant by the ambiguous phrase "messing with."  Nor is there any evidence that this statement was ineffective to remedy any untoward conduct in which officers may have been engaged at the time.[14]

As for Officer Johnson, plaintiff's evidence reflects that at an unspecified time, the Demopolis Police Department received a citizen's complaint that an officer named Tommy Johnson was in a consensual sexual relationship with a 17-year old female.  (Soronen Dep., at 9-

---

[12]     The record is exceedingly thin as to specifics of any sexually inappropriate conduct by Officer Smith preceding his interactions with Doe in November and December 2006.  At most, the record shows that Smith may have pressured an 18-year old female "friend" to have sex as a *quid pro quo* for assisting her with a malfunctioning vehicle.  (Jackson Dep., at 14.)  There is no evidence, however, that this information was reported to, or otherwise became known, to Chief Manuel or any other City authorities prior to the events involving Doe.  (*Id.* at 15-16.)  Chief Manuel specifically denied having "any indication that Terrance Smith would have sex with a minor," and testified that he was "shocked" to learn that he had done so. (Manuel Dep., at 52.)

[13]     The witness who alleges that Chief Manuel made this statement, Robert Clayton, worked as a Demopolis police officer "from 1995 to 2002."  (Clayton Decl. (doc. 71, Exh. A), at 1.)  As such, the statement at issue must have been made during that time period, or somewhere between 4 and 11 years prior to the November 2006 events that precipitated this lawsuit.

[14]     In her summary judgment brief, plaintiff extrapolates that "it is a fact that Police Chief Jeff Manuel had actual knowledge that his police officers were having sex with minor girls before the rape of plaintiff … and took no preventive measures."  (Doc. 71, at 2.)  Plaintiff significantly overstates her case, however, as her evidence does not support any reasonable inference of either "actual knowledge" by Chief Manuel or a lack of preventive measures.

10.)[15] The complaint was evidently lodged by the female's grandmother, not by the 17-year old herself. (*Id.* at 11-12.) The City commenced an internal investigation and obtained written statements from Officer Johnson;[16] however, the complainant "stopped cooperating and withdrew her complaint." (*Id.* at 10.) The investigator's understanding from a letter written by the 17-year old was that "she didn't want to pursue it." (*Id.* at 12.) At that time, the City terminated its investigation because "without a complaint from [the 17-year old], herself, or a guardian, we couldn't continue an investigation." (*Id.* at 10.) At no time during its investigation did the City interview the 17-year old. (*Id.* at 11-12.)[17] There is no indication that Officer Johnson had any involvement in the events between Jane Doe and Terrance Smith.

Finally, plaintiff would rely on the Declaration of Robert Clayton (doc. 71, Exh. A), who was a Demopolis police officer from 1995 through 2002. Clayton's Declaration states that "[i]t was common knowledge within the police force that some Demopolis police officers were having sexual relationships with minor girls," and names four such officers (but not Smith).

---

[15]    Such activity, had it occurred, would not have been *per se* unlawful. A 17-year old is legally capable of consent in Alabama. *See* Ala. Code § 13A-6-70(c)(1) ("A person is deemed incapable of consent if he is … [l]ess than 16 years old"); § 13A-6-62(a)(1) (defining second degree rape as involving sexual relations with "a member of the opposite sex less than 16 and more than 12 years old"); *Parks v. State*, 565 So.2d 1265 (Ala.Crim.App. 1990) ("under Alabama law, a female 16 years of age is technically not a 'child,' but is one capable of consenting to sexual intercourse").

[16]    The record is silent as to the contents of Officer Johnson's written statements. Plaintiff has presented no evidence suggesting that those statements placed the City on notice of a need to investigate further.

[17]    In her summary judgment brief, plaintiff characterizes the City's investigator, Tim Soronen, as "a sexual predator himself." (Doc. 71, at 11.) There is no non-hearsay record evidence to support such a statement, and plaintiff does not advance her cause by engaging in inflammatory name-calling. Equally unavailing is plaintiff's attempt to tar Soronen as an investigator who "does not believe the victims even when the offending officer has been convicted in a court of law." (*Id.* at 13.) The sole basis for this bit of hyperbole appears to be his testimony that he does not know what happened between Smith and Doe because he "didn't investigate it" and he "wasn't there." (Soronen Dep., at 22.) Nothing in this testimony supports a reasonable inference that Soronen believes Doe to be a liar. Moreover, the entire line of questioning was improper in that it called for hearsay as to matters about which Soronen properly explained he lacked personal knowledge. Plaintiff's use of exaggerated, incendiary rhetoric to smear a defense witness is unhelpful.

(Clayton Decl., at 1.)  Clayton's Declaration further states that Chief Manuel "was well aware of this fact," but that no training "was given to discourage police officers from having sexual relationships with minor girls."  (*Id.*)  However, the City correctly observes that the portions of Clayton's Declaration wherein he states that "Demopolis police officers were having sexual relationships with minor girls" and that Chief Manuel "was well aware of this fact" violate Rule 56's personal-knowledge requirement.  *See, e.g., Delaware Valley Floral Group, Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1382 (11th Cir. 2010) (Federal Rules of Civil Procedure "and the Eleventh Circuit require that affidavits … in opposition to summary judgment must be made with personal knowledge in order to create a genuine issue of material fact"); Rule 56(c)(4), Fed.R.Civ.P. ("[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge").[18]  Accordingly, the City's Motion to Strike (doc. 75) is **granted** as to those portions of the Clayton Declaration, which are hereby **stricken**.  The Motion to Strike is **denied** with respect to the Declaration statement that Clayton was aware of no training on this subject (which would plainly fall within his personal knowledge).  Also, the Court will consider the statement in Clayton's deposition recounting Chief Manuel's admonition that any officers "messing with underaged girls" must stop.[19]

---

[18]      Clayton's lack of personal knowledge is underscored by admissions in his deposition that he had "[n]o firsthand knowledge" of whether any of the four officers he identified had engaged in sexual relationships with minor females, and that his sole basis of information was "[j]ust talk you hear around the station."  (Clayton Dep., at 40.)  Clayton expressly denied knowledge that any Demopolis police officers had ever been "messing with young girls," and acknowledged that false rumors to that effect had been circulated about him too.  (*Id.* at 44.)  In Clayton's words, "I never heard, never saw anything" to confirm any such rumors about anybody.  (*Id.* at 48.)  And when asked specifically about Chief Manuel's knowledge, Clayton candidly admitted, "I don't know what Jeff knew" (*id.* at 50), thereby undercutting his Declaration statement that Chief "Manuel was well aware of that fact."  Thus, large portions of the Clayton Declaration rest on mere rumor and speculation, and are therefore impermissible under Rule 56(c)(4).

[19]      This appears to be the statement to which plaintiff refers in her "Response to Motion to Strike," wherein she indicates that Clayton "expressed personal knowledge at his deposition concerning Chief Jeff Manuel's knowledge of Demopolis Police Officers having sex with minor girls."  (Doc. 77, ¶ 1.)  Clayton's testimony that he heard Chief Manuel make this remark is obviously within his personal knowledge; furthermore, the contents of that remark would not be barred by the hearsay rule, inasmuch as it goes to Chief Manuel's state of mind rather than the truth of the matter asserted.  *See* Rule 803(3), Fed.R.Evid. (statements of (Continued)

## II.    Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

## III.    Analysis.

As noted, Doe has asserted a pair of claims against the City. Count One is a claim under Alabama Code § 11-47-190, alleging that the City had "actual notice of potential abuse" because Smith "had committed similar acts within the department." (Doc. 51, ¶¶ 14-15.) According to Count One, despite the City's "knowledge of similar conduct and actual notice of other abuse alleged victims," it "failed to take prompt remedial action reasonably likely to prevent the misconduct from recurring." (*Id.*, ¶¶ 15, 17.) Meanwhile, Count Two is framed as a Fourteenth Amendment Due Process Claim, wherein Doe alleges that the City "had either actual or constructive notice of Smith's propensity for sexual abuse," but "showed deliberate indifference

---

declarant's then-existing state of mind are not excluded by hearsay rule). That statement is likely also admissible as an admission by a party-opponent. *See* Rule 801(d)(2).

to the abuse by failing to correct the problem and prevent Smith from continuing to act as a Police Officer with access to children." (*Id.*, ¶¶ 20-22.)  The City has moved for summary judgment as to both claims.

### A. *Plaintiff's Claim under Alabama Code § 11-47-190.*

Under Alabama law, municipalities may not be held "liable for damages for injury done to or wrong suffered by any person … unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty."  Ala. Code § 11-47-190; *see also Walker v. City of Huntsville*, --- So.3d ----, 2010 WL 3798070, *25 (Ala. Sept. 30, 2010) ("the City, under § 11-47-190, may be liable only for acts of neglect, carelessness or unskillfulness").  Doe seeks to hold the City liable under that statute for the sexual assaults perpetrated by Smith, a City employee.

The glaring threshold problem with Doe's application of § 11-47-190 to these circumstances is that the statute "absolves a city from liability for an intentional tort committed by one of its agents." *Ex parte City of Gadsden*, 718 So.2d 716, 721 (Ala. 1998); *see also Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 743 (11th Cir. 2010) ("In sum, under § 11-47-190, a city is liable for negligent acts of its employees within the scope of their employment, ***but not intentional torts of its employees***.") (emphasis added); *Stephens v. City of Butler, Ala.*, 509 F. Supp.2d 1098, 1116 (S.D. Ala. 2007) ("municipalities are not liable for intentional acts of their agents"); *Ott v. City of Mobile*, 169 F. Supp.2d 1301, 1316 (S.D. Ala. 2001) ("Section 11-47-190 permits a cause of action against the City for [police officer]'s conduct only to the extent it was negligent; claims based on his intentional or wanton misconduct may not be maintained.").  Under any rational view, sexual assault is an intentional tort.[20]  Moreover, plaintiff's evidence is that she told Smith she was well below the age of 16 before their sexual relationship commenced, and that he told her he could to jail if anyone found out what they were doing.

---

[20]    *See generally Tillis Trucking Co. v. Moses*, 748 So.2d 874, 887 n.12 (Ala. 1999) (listing as example of intentional torts "the tort of assault and battery"); *USA Petroleum Corp. v. Hines*, 770 So.2d 589, 595 (Ala. 1999) ("[a]ssault and battery are intentional torts"); *Wood v. Cowart Enterprises, Inc.*, 809 So.2d 835, 837 (Ala.Civ.App. 2001) ("Alabama law does not give an aggrieved spouse the right to commit the intentional torts of assault and battery upon the other spouse's paramour.").

Given these facts, Doe cannot plausibly argue that Smith's conduct was unintentional or merely careless in that he did not know she was below the age of consent. Such a contention would contravene plaintiff's own evidence. Thus, insofar as Doe seeks to predicate her § 11-47-190 claim against the City on Smith's sexual assaults, the statute absolves the City from liability on that theory as a matter of law.

That said, careful inspection of the Amended Complaint suggests that Doe may be attempting to circumvent Alabama's prohibition on intentional-tort liability for municipalities by bootstrapping Count One to allegations that Chief Manuel negligently supervised or trained Smith. After all, the Amended Complaint reflects Doe's position that the City is liable under § 11-47-190 because of the City's failure to take remedial action to prevent Smith from sexually assaulting her, based on the City's actual knowledge of his similar acts. In other words, plaintiff's theory in Count One appears to be that the City is liable, not for Smith's rape of her, *per se*, but for Chief Manuel's neglect, carelessness or unskillfulness in supervising Smith.[21] Assuming Doe were travelling under that theory of liability, Count One may overcome the statutory bar on municipal liability for intentional torts, given that such a claim would spring from allegations that Chief Manuel proceeded in a neglectful, careless or unskilled manner in supervising/training Smith. *See generally Borders v. City of Huntsville*, 875 So.2d 1168, 1183 (Ala. 2003) ("where a plaintiff alleges a factual pattern that demonstrates neglect, carelessness, or unskillfulness the plaintiff has stated a cause of action under … § 11-47-190") (citation omitted); *see also Hawkins v. City of Greenville*, 101 F. Supp.2d 1356, 1364 (M.D. Ala. 2000) ("where a plaintiff alleges a factual pattern that demonstrates neglect, carelessness, or

---

[21]    Plaintiff could have facilitated the summary judgment process considerably by articulating in her response exactly what legal theory she is pursuing in Count One, and why the prohibition on municipal liability for intentional torts does not bar that claim. She elected not to do so, instead leaving it for this Court to read tea leaves or look to the astral plane to identify the precise claim she is attempting to bring against the City under § 11-47-190. Plaintiff proceeds in this manner at her peril. Courts are not saddled with the obligation to develop summary judgment arguments for litigants who fail to do so themselves. *See, e.g., Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) (noting that a litigant "cannot readily complain about the entry of a summary judgment order that did not consider an argument [she] chose not to develop for the district court at the time of the summary judgment motions") (citation omitted); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.").

unskillfulness of an agent of the city, the plaintiff has stated a cause of action against a municipality").

Even if Count One were grounded in Chief Manuel's alleged carelessness, rather than Smith's alleged assault, this claim still could not survive summary judgment. This is because a claim against a municipality for a supervisor's negligent hiring or training is not cognizable under Alabama law. "Municipal liability under Section 11-47-190 is based on the doctrine of *respondeat superior*. … For the employer to be liable under that doctrine, the employee must first be liable for a tort." *Ott*, 169 F. Supp.2d at 1314 (citations omitted); *see also Hamilton v. City of Jackson*, 508 F. Supp.2d 1045, 1057 (S.D. Ala. 2007) (to survive summary judgment as to § 11-47-190 claim brought against municipality for negligent training or supervision, "the Plaintiff must show that Alabama law recognizes a cause of action against a supervisory employee for the negligent training or supervision of a subordinate"). So if Doe wants to hold the City of Demopolis liable under § 11-47-190 on a negligent failure to supervise/train theory, she first must establish that a City employee (*i.e.*, Chief Manuel) may be held liable for that tort. The insuperable legal defect in such a claim is that Alabama courts do not recognize that cause of action against a supervisor or, in turn, a municipality. *See, e.g., Borton v. City of Dothan*, 734 F. Supp.2d 1237, 1258 (M.D. Ala. 2010) ("no Alabama court has expressly recognized a cause of action against a municipality for a supervisor's negligent training or supervision of a subordinate"); *Hamilton*, 508 F. Supp.2d at 1058 ("Alabama does not recognize an action against a municipality for negligent hiring, supervising, or training") (citations omitted). On that basis, federal courts have granted summary judgment to municipalities as to claims analogous to Doe's Count One. *See Hamilton*, 508 F. Supp.2d at 1058 (granting summary judgment to municipality on § 11-47-190 claim predicated on police chief's negligent supervision of officers who committed battery on plaintiff, reasoning that chief "cannot be liable for negligent training or supervision because no such cause of action exists under Alabama law" and that "this claim must also fail against the City of Jackson since its liability, if any, flows derivatively from its employee"); *Ott*, 169 F. Supp.2d at 1314-15 (dismissing § 11-47-190 claim against municipality for police chief's negligent failure to supervise officer who committed assault and battery on plaintiff, where Alabama law "recognizes no cause of action against a supervisor for negligent failure to supervise or train a subordinate").

The point, then, is simple:  Doe is seeking to hold the City liable in *respondeat superior* for negligent supervision or training by Chief Manuel.  But the above authorities (which plaintiff has made no attempt to rebut or distinguish) demonstrate that Alabama law does not recognize a cause of action against a supervisor or municipality for negligent supervision/training.  Because Chief Manuel could not be liable under Alabama law for negligent supervision/training, the City could not be derivatively liable under § 11-47-190 on such a theory.  Accordingly, pursuant to the *Ott* / *Hamilton* line of authorities, the City is entitled to summary judgment on Count One.

Based on the foregoing, it is not necessary to reach the question of whether Doe has made a showing that Chief Manuel did, in fact, negligently supervise or train Smith.  It bears noting, however, that even if Doe's claim for municipal liability predicated on a theory of negligent training/supervision were cognizable under Alabama law, entry of summary judgment in the City's favor would remain appropriate.  To maintain a claim of negligent training/supervision against an employer in Alabama, a plaintiff must come forward with "affirmative proof that the employee's incompetence was actually or constructively known by the master."  *Borton*, 734 F. Supp.2d at 1259 (citation omitted); *see also Ott*, 169 F. Supp.2d at 1315 (in Alabama, "the liability of an employer for negligent supervision or training requires, among other elements, proof of the employer's actual or constructive awareness of the employee's incompetency").  The summary judgment record lacks any affirmative proof that Chief Manuel or any other City supervisor had actual or constructive knowledge that Smith was likely to enter into a sexual relationship with an underaged female.[22]  As such, Doe cannot satisfy the elements of a negligent supervision/training claim here.

---

[22]        In arguing otherwise, plaintiff points to Chief Manuel's testimony that he had been aware of rumors that Terrance Smith had engaged in "sexually inappropriate conduct." (Manuel Dep., at 34-35.)  In the same breath, however, Chief Manuel made an important disclaimer that such rumors were "not necessarily [involving] underaged people."  (*Id.*)  And Chief Manuel's testimony was clear that he had no indication and no idea that Smith might have sex with a minor.  (*Id.* at 51-52.)  Given those clarifications and limitations in Chief Manuel's testimony, plaintiff cannot parlay vague allusions to "rumors" of unspecified "sexually inappropriate conduct" into affirmative proof that Chief Manuel knew of Smith's propensity to seduce and rape children.  Plaintiff has not developed or fleshed out what "rumors" Chief Manuel might have heard about Smith or what the "sexually inappropriate conduct" at issue might have been.  There is no factual basis, for example, to support a reasonable inference that those rumors involved sexual predation of minors rather than, as Chief Manuel had testified generally, "Officer X is sleeping with Officer B's spouse or things like that" (*id.* at 25), which (Continued)

In sum, the City's Motion for Summary Judgment is **granted** as to Count One because: (i) by the plain language of § 11-47-190, the City is not liable for Smith's intentional torts of sexually assaulting Doe; (ii) any effort to hold the City liable for alleged negligent training or supervision by Chief Manuel under § 11-47-190 must fail because Alabama law does not recognize a cause of action against a municipality or supervisor for negligent training or supervision; and (iii) even if Alabama did recognize such a cause of action, plaintiff has failed to show affirmative proof that Chief Manuel possessed actual or constructive knowledge of Smith's proclivities before the events at issue occurred.

### B.    Plaintiff's Section 1983 Claim.

Count Two of the Amended Complaint asserts a § 1983 claim against the City, predicated on allegations that "[t]here was a clear pattern of sexual abuse by Smith," the City "had either actual or constructive notice of Smith's propensity for sexual abuse," and the City "showed deliberate indifference to the abuse by failing to correct the problem and prevent Smith from continuing to act as a Police Officer with access to children." (Doc. 51, ¶¶ 20-22.) A fair reading of this claim is that Doe attempts to impose § 1983 liability on the City for failure to train and supervise Smith to prevent him from violating Doe's rights. The City moves for summary judgment on the ground that, *inter alia*, Smith violated an obvious right of Doe, as to which there can be no municipal liability under § 1983, as a matter of law.[23]

---

obviously would not have placed Chief Manuel on actual or constructive notice that Smith had a propensity to molest young girls. Viewing the record as a whole, rather than taking little snippets of Chief Manuel's testimony out of context, the Court is of the opinion that there is no genuine issue of material fact and no evidence from which a reasonable jury could find that Smith's incompetence was actually or constructively known by the master prior to the Doe incidents of November and December 2006, as would be necessary for plaintiff to be able to maintain a cognizable negligent supervision/training claim under Alabama law.

[23]    Plaintiff's briefs fail to address this legal argument, or to cite a single authority to support her apparent position that the City may be liable in these circumstances. As previously noted, this Court is not tasked with developing a party's summary judgment arguments for it. Nonetheless, well-established law requires that the merits of the Rule 56 Motion be examined, notwithstanding plaintiff's silence on this key point. *See generally Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) ("[e]ven in an unopposed motion [for summary judgment], … the movant is not absolve[d] … of the burden of showing that it is entitled to judgment as a matter of law") (citations and internal quotation marks omitted); *United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, (Continued)

Movant correctly states that Doe cannot use the § 1983 mechanism to hold the City liable for Smith's transgressions, independent of any wrongdoing by the City. Under § 1983, it is well settled that a municipality "may not be held liable for constitutional deprivations on the theory of *respondeat superior*." *Doe v. School Bd. of Broward County, Fla.*, 604 F.3d 1248, 1263 (11th Cir. 2010) (citation omitted). Rather, a § 1983 plaintiff must both identify conduct attributable to the municipality and show that it "was taken with the requisite degree of culpability, *i.e.*, that the municipal action was taken with deliberate indifference to its known or obvious consequences." *Id.* (citation omitted). Simply stated, "to prevail on a § 1983 claim against a local government entity, a plaintiff must prove both that her harm was caused by a constitutional violation and that the government entity is responsible for that violation." *Wyke v. Polk County School Bd.*, 129 F.3d 560, 568 (11th Cir. 1997). The government as an entity is responsible under § 1983 only when execution of its "policy or custom" inflicts the injury. *Id.*; *see also Sauls v. Pierce County School Dist.*, 399 F.3d 1279, 1287 (11th Cir. 2005) ("To impose liability on a municipality under § 1983, the plaintiff must identify a municipal 'policy' or 'custom' causing the deprivation of federal rights."). The City argues that Doe has not met her burden of identifying a municipal policy or custom that caused the deprivation at issue.

As mentioned, Count Two alleges that the City is responsible for the constitutional violation perpetrated by Smith because the City failed adequately to train or supervise him. To prevail on this theory, Doe must establish that the City exhibited deliberate indifference to the rights of its inhabitants. Indeed, the Eleventh Circuit has stressed that "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Vineyard v. County of Murray, Ga.*, 990 F.2d 1207, 1212 (11th Cir. 1993) (citation omitted); *see also Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005) (similar). "To establish a city's deliberate indifference, a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate

---

1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion … [and] ensure that the motion itself is supported by evidentiary materials.").

choice not to take any action." *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11ᵗʰ Cir. 2009) (citation omitted); *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1397-98 (11ᵗʰ Cir. 1994) ("Failure to train can amount to deliberate indifference when the need for more or different training is obvious, … and when the failure to train is likely to result in the violation of a constitutional right."). Also, to satisfy § 1983's causation requirement, it is necessary for a plaintiff to prove "that the deficiency in training actually caused the police officers' offending conduct." *Campbell v. Anderson County*, 695 F. Supp.2d 764, 774 (E.D. Tenn. 2010) (citations omitted).

On summary judgment, the City propounds a compelling argument that it could not have been deliberately indifferent here, because it was patently obvious to Smith and other police officers that they should not rape 13-year old girls. The reasoning is as follows: There was no need for the City to train or supervise its officers on the obvious point that they should refrain from sexually assaulting children, so the City cannot possibly have been deliberately indifferent in failing to provide such training or supervision. There is considerable support for this proposition in the case law. *See, e.g., Floyd v. Waiters*, 133 F.3d 786, 796 (11ᵗʰ Cir.) (where school security guard raped 14-year old girl, school district held not liable on a § 1983 failure to train or supervise theory, as guard's conduct was "clearly against the basic norms of human conduct" and the school district "was entitled to rely on the common sense of its employees not to engage in wicked and criminal conduct"), *vacated on other grounds*, 525 U.S. 802, 119 S.Ct. 33, 142 L.Ed.2d 25 (1998); *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 490 (11ᵗʰ Cir. 1997) (where police officer sexually molested arrestee, § 1983 claim against municipality for failure to train or supervise was properly dismissed because such failure is actionable only if there is "a likelihood that the failure to train or supervise will result in the officer making the wrong decision," and if proper response "is obvious to all without training or supervision," then failure to train or supervise generally is not so likely to produce a wrong decision as to support an inference of deliberate indifference) (citation omitted).[24]

---

[24] *See also Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10ᵗʰ Cir. 1998) ("Specific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior."); *Andrews v. Fowler*, 98 F.3d 1069, 1077 (8ᵗʰ Cir. 1996) ("In light of the regular law enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women."); *Samedi v.* (Continued)

As a general proposition, then, Doe's attempts to hold the City liable under § 1983 on a theory of failure to train or supervise Smith are doomed on their face for want of proof of deliberate indifference. The City was entitled to rely on the common sense of Smith and other police officers not to sexually assault children, and therefore was not bound to provide training or supervision to them on that point. Stated differently, the City's failure to train or supervise Smith on this matter was not sufficiently likely to produce a wrong decision by Smith to support an inference of deliberate indifference. Any police officer would know that he is not supposed to commit statutory rape. There is no evidence, and no reason to believe, that training or supervision by the City was reasonably necessary to educate and deter police officers from such conduct, as would be necessary for Doe to reach a jury on Count Two's deliberate indifference theory. In light of the foregoing considerations, and plaintiff's failure to address, much less distinguish, the *Sewell / Floyd* line of precedent, the Court agrees with the City that entry of summary judgment is warranted on this cause of action.

That said, the Court recognizes that a municipality's right to rely on the common sense of its police officers to refrain from perpetrating sex crimes on young girls is not unbounded, and that such reliance must give way where the municipality has "notice to the contrary." *Floyd*, 133 F.3d at 796; *see also Walker v. City of New York*, 974 F.2d 293, 300 (2nd Cir. 1992) ("While it is reasonable for city policymakers to assume their employees possess common sense, where there is a history of conduct rendering this assumption untenable, city policymakers may display deliberate indifference by doing so."); *Williams v. Enders*, 2010 WL 989978, *4 (M.D. Ga. Mar. 16, 2010) (opining that if municipality was aware of history of officers bartering arrests for

_____

*Miami-Dade County*, 134 F. Supp.2d 1320, 1352 (S.D. Fla. 2001) ("the allegations of sexual abuse of which plaintiff complains are so egregious, so 'clearly against the basic norms of human conduct' that County did not act with deliberate indifference when it did not train her to recognize Jones and Godwin's behavior as … illegal under the criminal law"); *Williams v. Enders*, 2010 WL 989978, *4 (M.D. Ga. Mar. 16, 2010) ("It is also clear to the Court that no training concerning the impropriety of the alleged conduct was necessary, as the proper response is obvious to all without training or supervision. … There is no question that bartering arrests for sexual favors or forcing members of the public to engage in sexual intercourse is improper."); *Campbell*, 695 F. Supp.2d at 774 (rejecting inadequate training claim where "no specific training was necessary to inform officers not to rape or sexually assault women in their custody").

sexual favors, then "the City may display deliberate indifference if it relied on the common sense of the members of the Police Department, rather than taking corrective measures").

Doe apparently seeks to establish deliberate indifference using this approach, as she asserts that "[t]he Chief of Police had actual knowledge that his officers were having sex with minor girls." (Doc. 71, at 13.) The problem with this argument is that the record does not support it. With regard to Smith, specifically, plaintiff proffers no evidence that, prior to November 2006, Smith had ever directed sexually inappropriate conduct towards girls under the age of 16 (the legal age of consent in Alabama), much less that Chief Manuel or any other City official was aware of any such proclivities by Smith at that time. At best, plaintiff points to Chief Manuel's testimony that he had heard rumors of sexually inappropriate behavior by Smith; however, he denied that such rumors involved activity with underaged girls.[25] On this record, there is simply no factual basis to support an inference that the City of Demopolis was on notice that Smith required training and supervision to deter him from committing statutory rape.[26]

More generally, plaintiff's sole evidence that the City was aware of any problems with police officers engaging in sexually inappropriate conduct with minors was Chief Manuel's

---

[25]    Unfortunately, plaintiff did not develop the record to pin down precisely what "rumors" Chief Manuel had heard about Smith. That evidentiary gap is detrimental to plaintiff's ability to withstand summary judgment, inasmuch as a jury would have to engage in impermissible speculation to find that any such "rumors" concerning Smith involved children. As things stand, the only information in the record is that the types of "rumors" Chief Manuel heard about his officers (not Smith, specifically) were things like "Officer X is sleeping with Officer B's spouse or things like that." Such reports, even if he had received them with respect to Smith, would not have given Chief Manuel any reason to suspect that Smith might be capable of sexually assaulting a 13-year old girl, or that corrective measures were necessary to correct people like Doe from Smith's predation.

[26]    Plaintiff's summary judgment brief suggests that her primary dissatisfaction with the City is that "despite the rumors concerning defendant, Smith … [and] [d]espite the fact [Chief] Manuel knew Smith had no training in the area of sexually inappropriate conduct, Smith was assigned to work with children." (Doc. 71, at 8.) The only "work with children" that the record shows Smith was assigned to do was to be stationed at school crossings from time to time. More importantly, the summary judgment record does not reveal that Chief Manuel or anyone else had reason to believe that Smith might pose a threat to underaged girls, such that he should not be assigned to school crossings or should be trained that second-degree rape was wrong. On this record, then, the City did not demonstrate deliberate indifference by assigning Smith to work school crossings without first training him to refrain from raping school girls.

isolated statement at a Demopolis police meeting occurring sometime between 1995 and 2002 that he had "heard guys was messing with underaged girls" and that "[i]f you're doing it, stop it."[27] The record does not establish when this statement was made, except that it must have occurred at least four years before Smith began his sexual relationship with Doe because the person who heard it (Clayton) was not employed as a Demopolis police officer after 2002. The record does not establish what Chief Manuel meant by the phrase "messing with." More importantly, the record does not show any reason to believe that this corrective measure by Chief Manuel (*i.e.*, sternly admonishing his officers to cease and desist any "messing with" underaged girls) was inadequate to address the problem. There is no evidence that any officers persisted in such conduct in the 4-plus years between the time of Chief Manuel's admonition and Smith's activities in this case. There is no evidence that Chief Manuel or any other City official was on notice that such behavior was continuing in the interim, or that further training, discipline or instructions were necessary to prevent Demopolis police officers from having sexual contact with children in the community they served.

In short, the evidence in the record on which Doe relies does not support a reasonable inference that the City of Demopolis was deliberately indifferent to the rights of its inhabitants by failing to train or supervise Smith or other police officers to refrain from statutory rape. Given that the conduct of which Doe accused Smith relates to basic norms of human conduct and constitutes a Class B felony in Alabama, and given the paucity of evidence that the City was on notice that Smith specifically (or police officers generally) were predisposed to carry on sexual relationships with girls under the age of 16, the City was entitled to rely on its employees' common sense not to do so. As such, the City was not deliberately indifferent in failing to train

---

[27] Doe also cites testimony that the City had received a complaint that Officer Tommy Johnson was involved in a sexual relationship with a 17-year old girl. But this evidence cannot bolster plaintiff's "deliberate indifference" argument for the following reasons: (i) there is no indication of time frame, and no indication in the record that this report predated the events at issue in this litigation, much less that there was temporal proximity between them; (ii) the complaint in that case was withdrawn, and the 17-year old girl indicated that she did not wish to pursue the matter; (iii) there was nothing illegal about Officer Johnson having consensual sex with a 17-year old girl because the age of consent in Alabama is 16; and (iv) Officer Johnson had nothing to do with Smith's conduct as to Doe.

police officers not to engage in such conduct, or in failing to supervise Smith in such a manner to remove him from any assignments at which he might encounter underaged girls.[28]

In sum, the summary judgment record supports neither a finding that the City displayed deliberate indifference in failing to train or supervise Smith or other officers to prevent them from sexually assaulting underaged girls, nor a finding that any such deliberate indifference by the City was the moving force behind Doe's injuries. Accordingly, the City is entitled to entry of summary judgment in its favor as to Count Two.

### C.     *Plaintiff's State-Law Claims Against Smith.*

The net result of the above rulings is that all of Doe's claims against the City of Demopolis are being dismissed on summary judgment. Counts One and Two of the Amended Complaint, which were asserted solely against the City, are now out of the case. All that remains is Count Three, which purports to be a state-law cause of action against defendant Smith for assault and battery, and invasion of privacy.

---

[28]     One other point bears emphasis. Recall that § 1983 requires a showing of causation, such that the municipal policy or custom must have caused the constitutional deprivation at issue. *See Sauls*, 399 F.3d at 1287 ("To impose liability on a municipality under § 1983, the plaintiff must identify a municipal 'policy' or 'custom' causing the deprivation of federal rights."); *McDowell v. Brown*, 392 F.3d 1283, 1292 (11th Cir. 2004) ("A plaintiff must prove causation by demonstrating that the municipality's deliberate conduct was the moving force behind his injury.") (citation and internal punctuation and emphasis omitted). There is no evidence to support a reasonable inference that any deliberate indifference by the City in training or supervising Smith was the moving force behind Doe's injury, or that any more or different action by the City would have altered the course of events. Plaintiff's evidence unequivocally shows that Smith knew what he was doing was wrong, as Doe had told him she was just 14 years old, and he had told Doe that he could go to jail if their illicit liaisons were discovered. Despite actual awareness that his conduct was illegal, Smith did it anyway. It is the height of folly to think that any amount of sexual harassment training (which Doe faults the City for not providing) would have made any difference to Smith. And there is no reason to think that assigning Smith away from school crossing duty would have mattered, either. After all, the only thing that happened at the crosswalk was that Doe and Smith smiled at each other. The contact that led to the sexual relationship was initiated by Smith calling Doe at her home telephone number, which he obviously could have done regardless of where the City assigned him to work. In short, plaintiff's § 1983 case against the City predicated on failure to train or supervise fails not only for lack of proof of deliberate indifference, but also for lack of evidence that any such deliberate indifference was the moving force behind the complained-of constitutional deprivation.

This Court does not possess original jurisdiction over Count Three. That claim does not purport to arise under the Constitution, laws or treaties of the United States, as would be necessary to trigger federal question jurisdiction under 28 U.S.C. § 1331. Likewise, there is no diversity jurisdiction over this cause of action under 28 U.S.C. § 1332, inasmuch as both Doe and Smith appear to be Alabama citizens and, hence, non-diverse. The only possible source of jurisdiction over Count Three, then, is the supplemental jurisdiction framework prescribed in 28 U.S.C. § 1367, which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

With the dismissal of Doe's § 1983 cause of action, however, there are no longer any claims pending in this action within the original jurisdiction of this District Court. This raises an important question as to the propriety of continued exercise of supplemental jurisdiction over Doe's state-law claim against Smith. By statute, "[t]he district courts may decline to exercise supplemental jurisdiction … if … the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Cook*, 402 F.3d at 1123 ("Because no basis for original federal jurisdiction presently exists, the district court has the discretion to decline to exercise supplemental jurisdiction."). The Eleventh Circuit "encourage[s] district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004). Nonetheless, declining to exercise supplemental jurisdiction is not a kneejerk action once all federal claims are dismissed; rather, "the court should take into account concerns of comity, judicial economy, convenience, fairness, and the like." *Cook*, 402 F.3d at 1123 (internal quotation marks omitted); *see also Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1267 (11th Cir. 2001) (similar). Of course, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered … will point toward declining to exercise jurisdiction over the remaining state-claims." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

If any remaining party (Doe or Smith) contends that, notwithstanding the Eleventh Circuit's preference for dismissal of state-law claims after all original-jurisdiction claims have been dismissed, this Court should exercise its discretion to retain supplemental jurisdiction over

Count Three, it must file a memorandum on or before **July 11, 2011**, setting forth the legal basis for its position, in light of the factors delineated by the Supreme Court and the Eleventh Circuit. The Court will take the supplemental jurisdiction question under submission after July 11, 2011, without oral argument.[29]

## IV. Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1. The City's Motion to Strike (doc. 75) is **granted in part**, and **denied in part** as set forth above, such that all portions of the Clayton Declaration as to which the declarant lacked personal knowledge are **stricken**. The Motion to Strike is **denied** as to the Declaration's statements concerning training.

2. The City's Motion for Summary Judgment (doc. 69) is **granted**. All claims and causes of action asserted by Doe against the City (including specifically Counts One and Two of the Amended Complaint) are **dismissed with prejudice**. Because no claims remain against that defendant, the Clerk of Court is directed to **terminate** the City of Demopolis as a party defendant.

3. Doe's claims against defendant Terrance Smith for assault and battery and invasion of privacy (as set forth in Count Three of the Amended Complaint) remain active and pending; however, the Court lacks original jurisdiction over them. Any party who contends that this Court should exercise supplemental

---

[29]    To assuage any fears that Doe may have, the Court observes that if it did decline supplemental jurisdiction, the ensuing dismissal of Count Three would be without prejudice. *See, e.g., Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999) ("If he decides to dismiss these state-law claims, then they should be dismissed without prejudice so that the claims may be refiled in the appropriate state court."); *Austin v. City of Montgomery*, 2006 WL 2219726, *6 (11th Cir. Aug. 2, 2006) ("When a court declines to exercise supplemental jurisdiction under § 1367(c)(3) because only state claims remain, the proper action is a dismissal without prejudice so that the complaining party may pursue the claim in state court."); *Ingram v. School Bd. of Miami-Dade County*, 2006 WL 306127, *2 (11th Cir. Feb. 10, 2006) (similar). Furthermore, any limitations concerns would be alleviated by Congress's pronouncement that, when a court declines to exercise supplemental jurisdiction, any state limitations period "shall be tolled while the claim is pending [in federal court] and for a period of 30 days after it is dismissed." 28 U.S.C. § 1367(d). The Supreme Court has upheld this provision as constitutional. *See Jinks v. Richland County*, 538 U.S. 456, 465, 123 S.Ct. 1667, 155 L.Ed.2d 631 (2003). Thus, Doe would retain a window of opportunity to pursue her state claims against Smith in state court, without confronting any new limitations defenses by virtue of the dismissal in federal court.

jurisdiction over Count Three must file a brief, supported by authority as appropriate, setting forth its position on or before **July 11, 2011.**

4.      In light of the foregoing developments, all remaining pretrial and trial deadlines (including the Final Pretrial Conference scheduled for July 7, 2011 at 3:00 p.m. and the jury selection setting of August 2, 2011) are **continued** until further notice.  If the Court elects to exercise § 1367 jurisdiction over Count Three, an amended scheduling order will be entered to delineate new pretrial and trial settings.


DONE and ORDERED this 30th day of June, 2011.


                                    s/ WILLIAM H. STEELE
                                    CHIEF UNITED STATES DISTRICT JUDGE